UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PERRY C.,[1]

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION & ORDER

19-CV-0772MWP

**PRELIMINARY STATEMENT**

Plaintiff Perry C. brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income Benefits ("DIB/SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 13, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## **DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 5, 2015, the alleged onset date. (Tr. 13-31).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of obesity; carpal tunnel syndrome, status post release surgeries; bilateral elbow osteoarthritis; bilateral hip disorder, status post total left hip replacement in July 2017; lumbar spine disorder; obstructive sleep apnea; hypertension; and mild cardiovascular disease. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform sedentary work with certain limitations. (*Id.*). Specifically, the ALJ found that plaintiff could frequently handle and finger and occasionally perform postural activities, but could not climb ladders, ropes, or scaffolds or be exposed to unprotected heights. (*Id.*). At step four, the ALJ determined that plaintiff was unable to perform his past work. (*Id.*). At step five, the ALJ determined that prior to December 10, 2017, based on plaintiff's age, education, work experience, and RFC, other jobs

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

existed in significant numbers in the national economy that plaintiff could perform, such as inspector, clerk/cashier, and charge account clerk.  (*Id.*).  Accordingly, the ALJ found that plaintiff was not disabled prior to December 10, 2017.  (*Id.*).  The ALJ further concluded that on December 10, 2017, plaintiff's age category changed, rendering him disabled on that date by application of the Medical Vocational Guidelines (the "Grid"), specifically Grid Rule 201.12, 20 C.F.R. Part 404, Subpart P, Appendix 2.  (*Id.*).

### III.  Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled prior to December 10, 2017, is not supported by substantial evidence and is the product of legal error. (Docket # 13-1).  Plaintiff challenges the ALJ's RFC determination on the grounds that it was not supported by substantial evidence because the ALJ improperly evaluated three medical opinions contained in the record.  (*Id.* at 10-19).  Specifically, plaintiff contends that the ALJ failed to provide good reasons for discounting the medical source statements of his treating orthopedic surgeon Joseph Bax ("Bax"), MD, and primary care physician Simmanjeet Mangat ("Mangat"), MD.  (*Id.* at 10-14).  Next, he challenges the ALJ's physical RFC assessment on the grounds that it improperly relied upon a stale opinion authored by state consultative examiner Donna Miller ("Miller"), DO, on October 22, 2015, resulting in an RFC not supported by substantial evidence.  (*Id.* at 14-19).

### IV.  Analysis

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R.

§ 404.1527(d)³). Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

    (1)    the frequency of examination and length, nature, and extent of the treatment relationship,

    (2)    the amount of medical evidence supporting the opinion,

    (3)    the consistency of the opinion with the record as a whole,

    (4)    whether the opinion is from a specialist, and

    (5)    whatever other factors tend to support or contradict the opinion.

---

³ This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

    In his decision, the ALJ acknowledged that Mangat had a treating relationship with plaintiff, but accorded her opinion only "some partial weight" on the grounds that it was inconsistent with the record as a whole and was internally inconsistent. (Tr. 26-27). Specifically, the ALJ stated:

7

> Mangat opined the claimant was "very limited" in most areas of physical functioning, including sitting. There was no evidence of limitations in mental functioning. The doctor vaguely reported the claimant should not do any strenuous work due to hip problems. This evidence is given some partial weight. It is given some weight because [Mangat] was a treating provider. The claimant underwent hip surgery in July 2017 around the time [she] completed the form, so some restrictions in physical functioning are reasonable during a period of recovery. However, this is given little weight as an opinion of functioning since the alleged onset date. It is inconsistent with the medical evidence that shows normal physical findings after the alleged onset date. It also appears internally inconsistent with finding the claimant "very limited" physically, yet noting he should not do any strenuous work. This does not reflect that the claimant could not do sedentary work since the alleged onset date.

(*Id.*).

Plaintiff began receiving primary care treatment at Niagara Falls Primary Care Center in July 2016, and he received treatment from various of its providers, including Mangat. (Tr. 602-61). Upon examination at his first visit, he demonstrated lumbar stiffness and an abnormal gait and was referred to Dr. Bax for an orthopedic evaluation of his hip and low back pain. (Tr. 602). He was prescribed a cane at a subsequent visit. (Tr. 607).

On July 17, 2017, Mangat evaluated plaintiff for pre-operative clearance prior to his hip surgery. (Tr. 648-49). Upon examination, plaintiff demonstrated limited range of motion in his left hip. (*Id.*). That same day, Mangat completed a form entitled Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination. (Tr. 663-64). In that form, Mangat opined that plaintiff was "very limited" in his ability to walk, stand, sit, lift, carry, push, pull, bend, or climb. (*Id.*). Plaintiff's surgery for a total left hip replacement occurred on July 26, 2017, approximately nine days later. (Tr. 671-73).

Review of the ALJ's decision, the record, and Mangat's opinion demonstrates that the grounds provided by the ALJ for discounting the restrictions assessed by Mangat do not

8

constitute "good reasons." As an initial matter, I disagree that Mangat's opinion may be interpreted to suggest that the limitations identified related only to the period when plaintiff was recovering from his left hip surgery. (*Id.*). As shown above, Mangat's opinion predated plaintiff's surgery; nothing in the opinion may be interpreted to suggest that she identified those limitations in anticipation of the upcoming surgery.

Nor do I find inconsistencies between Mangat's conclusion that plaintiff was very limited in his ability to engage in physical functioning and her opinion that he should avoid "strenuous activities." Simply stated, it is entirely consistent to advise a patient who suffers from limited physical functioning to avoid engaging in strenuous activities. *See*, *e.g.*, *Ortiz v. Berryhill*, 2019 WL 6117967, *3 (E.D.N.Y. 2019) ("[t]he ALJ appears to have been making hay about the [treating physician's] opinion that plaintiff was able to act 'appropriately' in public, even though his treatment records show that he had difficulty engaging in social situations[;] [b]ut these aren't necessarily contradictory").

The only other reason the ALJ provided for discounting Mangat's opinion was that it "was inconsistent with the medical evidence that shows normal physical findings after the alleged onset date." (Tr. 27). The ALJ did not cite to any medical findings in support of this statement, although he noted elsewhere in the decision that plaintiff demonstrated "normal neurological exams in April 2016 and January 2017." (Tr. 24 (citing Tr. 484, 557). Notably, these examinations were not conducted by treating providers; rather, they were conducted by emergency department providers during visits in which plaintiff sought treatment for chest pain and a rash. (Tr. 482-88, 555-60). In any event, and as acknowledged by the ALJ, several of plaintiff's treatment providers assessed positive physical findings upon examination of plaintiff after the onset date, including "lumbar stiffness, an abnormal gait, and positive straight leg raise

test."  (Tr. 24 (citing Tr. 602, 698).  On this record, I conclude that the ALJ failed to provide a justifiable basis for discounting Mangat's opinion.  *See Marchetti v. Colvin*, 2014 WL 7359158, *13 (E.D.N.Y. 2014) ("[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on . . . conclusory assertions of inconsistency with the medical record") (collecting cases); *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594 at *2 ("this . . . conclusory statement about the treatment records fails to fulfill the heightened duty of explanation"); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's opinion was "inconsistent with the evidence and record as a whole" was "simply not the 'overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion'") (quoting *Velazquez v. Barnhart*, 2004 WL 367614, *10 (D. Conn. 2004)).  Because the ALJ failed to provide "good reasons" for rejecting the opinion authored by plaintiff's treating physician, I find that remand is warranted.  *See Halloran*, 362 F.3d at 33 ("[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

Although I need not reach plaintiff's remaining challenges to the weighing of the opinions authored by Bax and Miller, *see Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted), I observe that Miller's medical source statement is stale at least as it relates to plaintiff's hip impairment.  Indeed, "[i]n considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition."  *See*

10

*McGrady v. Saul*, 2020 WL 2538483, *3 (W.D.N.Y. 2020) (collecting cases); *Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) ("[a] medical opinion may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision") (quotations omitted).

On October 22, 2015, plaintiff presented to consultative examiner Miller for an internal medicine examination, complaining of chronic low back pain, knee pain, carpal tunnel syndrome, asthma, and sleep apnea. (Tr. 453-57). Miller noted that plaintiff reported suffering from low back pain that sometimes radiated to his hip and was exacerbated by bending, lifting, carrying, and working. (*Id.*). With respect to activities of daily living, plaintiff reported that he was able to cook and dress daily, bathe or shower a few times a week, and clean, shop and wash laundry as needed. (*Id.*).

On physical examination, plaintiff appeared in no acute distress, had a normal gait, declined to walk on heels and toes, could squat 25% of normal, had normal stance, used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). His cervical spine showed full flexion, extension, and lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Plaintiff exhibited limited range of motion in his lumbar spine but a negative straight leg raise test. (*Id.*). He had full range of motion in his shoulders, elbows, forearms, wrists, and ankles, bilaterally. (*Id.*). Range of motion in his knees was limited to 100 degrees, and he exhibited range of motion limitations in his hips, bilaterally. (*Id.*). Plaintiff had no sensory deficit, full strength in his upper and lower extremities, and full grip strength, bilaterally. (*Id.*). Miller diagnosed plaintiff with chronic low back pain, right knee pain, remote history of ankle fracture, bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release,

11

asthma, hypertension, sleep apnea, and obesity. (*Id.*). Miller also opined that plaintiff had mild limitation in motion of his hands and moderate limitation in heavy lifting, bending, carrying, kneeling, and squatting. (*Id.*). Additionally, she opined that plaintiff should avoid dust, irritants, and tobacco exposure. (*Id.*).

Following Miller's evaluation, plaintiff received ongoing treatment to address issues with his back and hip pain. X-rays of plaintiff's hips taken on January 1, 2016, demonstrated "marked degenerative changes at the bilateral hip joints with bone-on-bone." (Tr. 492). In July 2016, plaintiff established primary care at Niagara Falls Memorial Primary Care Clinic and was referred to Dr. Bax for evaluation of his back and hip pain. (Tr. 602-603). After meeting with plaintiff and reviewing the x-rays, Bax prescribed medication and suggested that plaintiff should consider a total hip replacement if the medication did not provide relief. (Tr. 589). Plaintiff expressed reservations about the surgery and opted to pursue relief through steroid injections. (Tr. 583). Although the injections initially provided relief, they proved ineffective in managing plaintiff's hip pain, and he underwent a total left hip replacement on July 26, 2016. (Tr. 574-80, 585, 671-76).

After his surgery, plaintiff experienced complications in his left hip, including an infection, hematoma, and tear of the IT band. (Tr. 680-83). He had another surgery on August 6, 2017, during which the surgical site was debrided and drained, and the IT band was repaired. (Tr. 680-83, 1030). He was discharged to a rehabilitation center for post-surgical care and thereafter received ongoing post-surgical support through a visiting nurse service. (Tr. 680-83, 1030, 1052-058, 1147-557). Despite the surgery, plaintiff continued to complain of pain in his left hip and still needed a total replacement of his right hip. (Tr. 29, 61, 85, 1039-043).

As this overview demonstrates, following Miller's October 2015 examination, plaintiff developed an extensive medical history relating to bilateral hip impairment – including new diagnoses, associated functional limitations, and two separate surgeries – which reveals a substantial deterioration in his hip condition after Miller rendered her opinion.  This subsequent history calls into question the reliability and probative value of Miller's October 2015 evaluation, which, although identifying some range of motion limitations in the hips, contained no limitations for standing, walking, or sitting (Tr. 453-57), and suggests that plaintiff's physical capabilities changed after Miller's examination.  Accordingly, Miller's opinion pertaining to her evaluation of plaintiff's hips appears stale, and remand will allow the ALJ to obtain a more current medical assessment of plaintiff's functional capacity related to these impairments.  *See*, *e.g.*, *Vazquez v. Saul*, 2019 WL 3859031, *3-4 (W.D.N.Y. 2019) (remanding due to the ALJ's reliance on a consultative examiner's stale medical opinion; "the opinion [from the consultative examiner] is clearly stale with regard to [claimant's] bilateral carpal tunnel syndrome [that was diagnosed more than two years after opinion was rendered][;] . . . [consultative examiner] did not opine about any limitations in [claimant's] hand dexterity; instead, [consultative examiner] found '5/5' grip strength[;] . . . [s]o there was a significant deterioration in [claimant's] condition after [consultative examiner's] exam[;] [a]nd [nurse's] diagnosis and referral for treatment of carpal tunnel syndrome renders [consultative examiner's] opinion stale regarding possible limitations due to that ailment"); *Irby v. Comm'r of Soc. Sec.*, 2019 WL 6696778, *7-8 (W.D.N.Y. 2019) (finding that ALJ erroneously relied on stale opinions regarding claimant's hand functioning; "[consultative examiner's] evaluation was clearly stale with respect to the functioning of both hands: it was completed immediately after [claimant's] first surgery – so close that she could not evaluate [claimant's] right hand – and before [claimant's] left-hand surgery even took place");

*Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, *5 (W.D.N.Y. 2017) ("[a] stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
   February 9, 2021